IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES CAN COMPANY, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | No. 05 C 3684 |
| LIMITED BRANDS, INC., BATH & BODY WORKS, INC., HENRI BENDEL, INC., BATH & BODY WORKS D/B/A/ THE WHITE BARN CANDLE CO., | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on the parties' request for the court to construe certain disputed claims in United States Patent Number 6,457,969 ("'969 Patent"). We construe the pertinent claims in accordance with the findings below.

## BACKGROUND

Plaintiff United States Can Company, Inc. ("U.S. Can") is the assignee of the '969 Patent, which covers candle holders, specifically "a candle tin having a removable cover which further acts as a base for the candle tin." ('969 Patent Col 1,

1

Ln. 11-12). U.S. Can alleges that in September 2004, it sent a letter to Defendant Bath & Body Works, Inc. D/B/A/ The White Barn Candle Co., "informing defendants of their infringing actions." (Compl. Par. 16). According to U.S. Can, Defendants Limited Brands, Inc., Bath & Body Works, Inc., Henri Bendel, Inc., and Bath & Body Works, Inc. D/B/A/ The White Barn Candle Co. ("Limited") did not cease their infringement of the '969 Patent after their receipt of the letter. U.S. Can brought the instant action claiming that Limited has wilfully and deliberately infringed the '969 Patent by selling candle tins under the trade name "Henri Bendel Home." The parties have requested the court to construe certain disputed terms in the claims without holding any oral arguments.

## LEGAL STANDARD

Claim construction is a matter of law to be determined by the court. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The Federal Circuit has stated that "[w]hen interpreting claims, [a court should] inquire into how a person of ordinary skill in the art would have understood claim terms at the time of the invention." *Pfizer, Inc. v. Teva Pharmaceuticals, USA, Inc.*, 429 F.3d 1364, 1372-73 (Fed. Cir. 2005)(citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed.Cir. 2005)). In applying this standard, "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the

2

specification" and the prosecution history. *Id.*; *Phillips*, 415 F.3d at 1313-14. In addition, "[i]n some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent . . ., and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words [in which case] general purpose dictionaries may be helpful." *Id.* at 1314 (internal citations omitted).

## DISCUSSION

The parties in the instant action dispute three terms contained in independent Claims 1 and 5 of the '969 Patent. Specifically, the parties dispute the meaning of the terms "protrusions formed," "seat," and "cup-shaped."

I. The Term "Protrusions Formed"

Claims 1 and 5 of the '969 patent both require "protrusions formed on the closed end of the holder and extending therefrom . . . ." ('969 Patent Col 5, Ln. 54-55); ('969 Patent Col 6, Ln. 27-28). U.S. Can argues that the term "protrusions formed" should be construed to include those either "formed to be one piece or to be secured to the holder bottom." (P Mem. 12). In support of this contention, U.S. Can argues that the specification does not expressly limit the protrusions to those that are formed from the same piece as the holder and that "[t]he term 'formed' has the customary and ordinary meaning of 'bring together parts or combine to create

3

(something) . . . .'" (P Mem. 11)(quoting *Oxford Dictionary of English*). Limited argues that "[a] person of ordinary skill it [sic] the art would understand that the candle tin is a stamp-formed can with protrusions or recesses formed in the one piece of sheet metal." (D Resp. 12). The '969 Patent does not discuss in any way the attachment of external protruding feet to the bottom of the candle holder. Therefore, we agree with Limited that the term "protrusions formed" in Claims 1 and 5 means protrusions actually formed from the same piece of sheet metal as the holder, and does not mean protrusions that are attached to the holder. *See Wang Lab., Inc. v. America Online, Inc.*, 197 F.3d 1377, 1383 (Fed. Cir. 1999)(holding that because "[t]he only embodiment described in the [patent at issue's] specification is the character-based protocol, and the claims were correctly interpreted as limited thereto").

II. The Term "Seat"

Both Claim 1 and Claim 5 of the '969 Patent require "protrusions resting upon the closed end of the cover to seat the holder on the cover." ('969 Patent Col 5, Ln. 54-56); ('969 Patent Col 6, Ln. 27-29). U.S. Can argues that the term "seat" should not be construed so that it necessarily means "to fit within a recess." (P Mem. 13). Instead, U.S. Can contends that the term "seat" should also be construed to mean "to rest on." (P Mem. 14). Limited contends that the term "seat" necessarily requires "some level of engagement or fit – in this case between the holder and the cover,"

4

rather than also meaning to rest. (D Mem. 9).

The Federal Circuit has stated that "it is axiomatic that a claim construction that excludes a preferred embodiment . . . 'is rarely, if ever correct and would require highly persuasive evidentiary support.'" *Anchor Wall Systems, Inc. v. Rockwood Retaining Walls, Inc.,* 340 F.3d 1298, 1308 (Fed. Cir. 2003)(quoting *Vitronics*, 90 F.3d at 1583). In the '969 Patent, the embodiment shown in Figures 1B and 1C clearly show the holder's protruding feet merely resting on the cover, as opposed to Figure 5B, in which the protruding feet are fit into the cover. Limited argues that "[v]irtually all of the Figures show the candle tin seated on the cover such that there is some engagement . . . ." (D Mem. 9). However, virtually all is not the same as all of the embodiment figures. Accordingly, Limited's argument further supports U.S. Can's construction of the term "seat."

In addition, "the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Phillips*, 415 F.3d at 1315. In the '969 Patent, Claim 2, which is a dependant claim, states that "the closed end of the cover has a recess formed therein for seating the protrusions . . . ." ('969 Patent Col 5, Ln. 57-58). The reference to a recess in which the protrusions can be seated is not present in independent Claims 1 and 5 and, therefore, the requirement that the term "seat" necessarily involves engagement between the holder and the cover should not be read into Claims 1 and 5. Accordingly, we agree with U.S. Can and find that the

5

term "seat" in Claims 1 and 5 means to either rest on or fit into the cover.

III. "Cup Shaped"

Finally, both Claims 1 and 5 require a "cup shaped" cover and holder. ('969 Patent Col 5, Ln. 49); ('969 Patent Col 6, Ln. 12, 17). U.S. Can argues that the term "cup shaped" should be construed to mean "generally round; although the base can also be generally rectangular, star shaped, or another preferred shape," as is stated in the specifications for the '969 Patent. (P Resp. 11). Limited argues that the term "cup shaped" should be construed to mean "a structure formed by a generally round or circular sidewall . . . ." (D Mem. 14).

The Federal Circuit has made it clear that "claims 'must be read in view of the specification, of which they are a part' [that] the specification 'is always highly relevant to the claim construction analysis [and that] [u]sually, it is dispositive.'" *Phillips*, 415 F.3d at 1315(quoting *Markman*, 52 F.3d at 979, and *Vitronics*, 90 F.3d at 1582). The Federal Circuit has also stated that "the inventor's lexicography governs." *Phillips*, 415 F.3d at 1316. In the instant action, the summary of the invention states that the patent "includes a cup shaped generally circular or rectangular holder" and the specification states that the cup-shaped base is "generally round [even though] it can also be generally rectangular, star shaped, or another preferred shape." ('969 Patent Col 1, Ln. 51-52); ('969 Patent Col 2, Ln. 32-34). It is clear from this language in the patent that the term "cup shaped" is

6

intended to include a hollow structure that is generally round, although it can also include hollow structures that are generally rectangular, star-shaped, or any other shape.

Limited argues that the prosecution history of the '969 Patent supports its interpretation of the term "cup shaped." Specifically, Limited argues that the original Claim 1, which was rejected by the Patent Examiner as being anticipated by United States Patent Number 6,155,451, Pietruch *et al.* ("Pietruch Patent"), did not include the "cup shaped" limitation. Accordingly, Limited argues that U.S. Can "is now estopped from arguing that its patent covers anything other than [round] cup shaped tins." (D Mem. 13). The Federal Circuit has stated that "the prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Phillips*, 415 F.3d at 1317. However, Limited's interpretation of the prosecution history of the '969 Patent is misplaced. Limited correctly states that the Patent Examiner did reject Claim 1 for anticipating the Pietruch Patent. However, the Examiner did not in any way state that the rectangular shape of the prior art was the reason that the original Claim 1 was rejected. Moreover, the prosecution history shows that the original Claim 1 was also rejected for being anticipated by United States Patent Number 5,879,151, Schultz *et al.* ("Schultz Patent"), which discloses a round base. If U.S. Can's amendment had limited Claim 1 to holders and covers that

were circular or round, as Limited contends, Claim 1 would still have been anticipated by the Schultz Patent. Accordingly, the prosecution history in this case does not support Limited's contention relating to the meaning of the term "cup shaped." Therefore, based on the above, we agree with U.S. Can and construe the term "cup shaped" to mean a hollow structure that is "generally round" or "generally rectangular, star shaped or another preferred shape."

## CONCLUSION

Based on the foregoing analysis, we construe the term "protrusions formed" to mean protrusions actually formed from the same sheet of metal as the holder, and not to mean protrusions that are attached to the holder. We construe the term "seat" to mean to either rest on or fit into the cover. Finally, we construe the term "cup shaped" to mean a hollow structure that is "generally round" or "generally rectangular, star shaped or another preferred shape."

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: April 19, 2006