IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BALL AEROSOL AND SPECIALTY,          )
CONTAINER INC.,                      )
                                     )
          Plaintiff,                 )
                                     )
     v.                              )     No. 05 C 3684
                                     )
                                     )
LIMITED BRANDS, INC., BATH &         )
BODY WORKS, INC., HENRI BENDEL,      )
INC., BATH & BODY WORKS D/B/A/       )
THE WHITE BARN CANDLE CO.,           )
                                     )
          Defendants.                )


MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

          This matter is before the court on Plaintiff Ball Aerosol and Specialty

Container Inc.'s ("BASC") motion for summary judgment on the issue of patent

infringement and motion to strike.  It is also before the court on Defendant Limited

Brands, Inc.'s, Defendant Bath & Body Works, Inc.'s, Defendant Henri Bendel,

Inc.'s, and Defendant Bath & Body Works, Inc. D/B/A/ The White Barn Candle

Co.'s (collectively "Limited Defendants") motion for summary judgment on the

issue of non-infringement, motion for summary judgment on the issue of invalidity,

1

and alternative motion to limit damages. For the reasons stated below, we grant BASC's motion for summary judgment on the issue of infringement, and deny BASC's motion to strike as moot. We also deny Limited Defendants' motion for summary judgment on the issue of invalidity, deny their motion for summary judgment on the issue of non-infringement, and deny their alternative motion to limit damages as premature.

## BACKGROUND

BASC alleges that U.S. Can Company, Inc., BASC's predecessor, is the assignee of U.S. Patent No. 6,457,969 ("'969 Patent"). Claims 1 and 5 of the '969 Patent generally cover a candle tin comprised of a hollow candle holder in which a candle is placed and a cover that, when the candle is lit, is to be used as a base upon which to place the candle so that heat transferred through the bottom of the candle tin does not scorch the surface that the candle tin would otherwise be placed upon. Defendants Bath and Body Works, Inc. ("BBW") and Henri Bendel Inc. ("Bendel"), began selling the Henri Bendel Home Scented Travel Candle ("Accused Candle Tin") in March and April of 2004, respectively. Bendel purchased the Accused Candle Tin from BBW up to the Fall of 2005, and BBW has stopped manufacturing the Accused Candle Tin.

BASC brought the instant patent infringement action against Limited Defendants, alleging that the Accused Candle Tin infringes claims 1 and 5 of the

'969 Patent. On April 19, 2006, we construed the terms "Protrusions Formed," "Seat," and "Cup Shaped." We must now consider the parties' cross motions for summary judgment on the issue of infringement, Limited Defendants' motion for summary judgment on the issue of invalidity, and BASC's motion to strike Limited Defendants' expert's declaration.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©. In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56©). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for

summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must consider the evidence as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255.

In the context of patent infringement, summary judgment is appropriate only if "no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents." *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1339 (Fed. Cir. 2001); *see also Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370, 1376 (Fed. Cir. 2004)(stating that "a trial court may determine infringement on summary judgment only 'when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device'"). The burden of establishing infringement is upon the patentee suing for infringement and thus "an accused infringer seeking summary judgment of non-infringement may meet its initial responsibility either by providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case." *Novartis Corp. v. Ben Venue Laboratories, Inc.*, 271 F.3d 1043, 1046 (Fed.

Cir. 2001)(stating that "summary judgment of non-infringement [may] only be granted if, after viewing the alleged facts in the light most favorable to the non-movant [and drawing all justifiable inferences in the non-movant's favor,] there is no genuine issue whether the accused device is encompassed by the [patent] claims"); *Vivid Techs., Inc. v. American Science & Eng'g, Inc.*, 200 F.3d 795, 807 (Fed. Cir. 1999); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999).

## DISCUSSION

Limited Defendants have moved for summary judgment on the issues of patent invalidity and patent infringement, and have moved in the alternative to limit damages. BASC has moved for summary judgment on the issue of patent infringement. BASC has also filed a motion to strike.

## I. Invalidity

Limited Defendants have moved for summary judgment on the issue of invalidity, claiming that Claims 1 and 5 of the '969 Patent are either invalid as anticipated or invalid due to obviousness. An issued patent is presumed valid by statute, and the party asserting invalidity bears "the burden of establishing invalidity of a patent or any claim thereof . . . ." 35 U.S.C. § 282. This presumption can be overcome "only by facts supported by clear and convincing evidence to the

contrary." *Enzo Biochem, Inc. v. Gen-Probe Inc.,* 323 F.3d 956, 962-63 (Fed. Cir. 2002).

A. Anticipation

A claim is invalid by anticipation if a single prior art reference expressly or inherently discloses each claim limitation. *Perricone v. Medicis Pham. Corp.*, 432 F.3d 1368, 1375 (Fed. Cir. 2005). Therefore, a claim may be anticipated by a prior art reference that inherently discloses a claim limitation even if that limitation is not expressly disclosed. *Id.* at 1375-76. Whether a prior art reference inherently discloses a claim limitation is a question of fact. *In re Schreiber*, 128 F.3d 1473, 1477 (Fed. Cir. 1997). A claim limitation is anticipated through inherent disclosure if the prior art "*necessarily* functions in accordance with, or includes," the limitation. *MEHL/Biophile Int'l Corp. v. Milgraum*, 192 F.3d 1362, 1365 (Fed. Cir. 1999)(emphasis added). To establish inherent disclosure, it is "sufficient to show that the natural result flowing from the operation as taught would result in the performance of the questioned function . . . ." *Id.* (quoting *In re Oelrich*, 666 F.3d 578, 581 (C.C.P.A. 1981)). However, simply because "a certain thing *may* result from a given set of circumstances is not sufficient." *Id.* (emphasis in original).

Limited Defendants argue that claims 1 and 5 of the '969 are anticipated by U.S. Patent No. 6,398,544 ("'544 Patent"). The purpose of the '544 Patent is to "provide a candle can . . . [that] includes an insulating and highly effective flash over prevention safety bottom." U.S. Patent No. 6,398,544 col.3 l.1-4 (filed Jun. 4,

2002).  It is undisputed that the '544 Patent "discloses a candle tin comprising a hollow candle holder at one end . . . in which a candle with a wick for burning is disposed."  (L SF Par. 36).  Additionally, the patent discloses an "internal upwardly directed cone shaped dome" formed from the bottom of the candle tin.  U.S. Patent No. 6,398,544 col.5 l.5-6, fig.2 (filed Jun. 4, 2002).  In one embodiment, bumps are formed into the bottom of the tin during the bottom forming process to diminish the contact area between the bottom of the candle tin and the surface area upon which it rests.  U.S. Patent No. 6,398,544 col.5 l.12-17, figs.2,7,8 (filed Jun. 4, 2002).

The '544 Patent does not, however, disclose a cover for the candle tin or a practice by which to place the candle tin on such a cover to further aid in flash over prevention.  *See* U.S. Patent No. 6,398,544.  Limited Defendants argue that these missing '544 Patent claim limitations are inherently disclosed in the '544 Patent, and that such inherent disclosure is an undisputed fact.  Specifically, Limited Defendants state that "[i]t is self evident that a cover could readily be used with the holder disclosed in the ['544] Patent and used as a base."  (L Mot. Inv. 9).  In support, Limited Defendants show the presence of a rib near the top of the '544 Patent's candle tin in some of the drawings that could be used to "hold a cover in place."  (L Mot. Inv. 9).  Limited Defendants also cite BASC's expert's statement that many cans have a cover, (Rep. L Mot Inv. 4), and Limited Defendants' own expert's opinion that "'a cover is expressly contemplated'" in the '544 Patent.  (L Mot. Inv. 9).  To provide support for the cover's use as a base, Limited Defendants refer to the '969 Patent's file history, in which the examiner noted that candle tins of different

patents that also contained a cover could perform the functional limitations of the claims. (L Mot. Inv. 4). In light of this evidence, Limited Defendants argue that "the use of a candle tin, including its use as a base, is a natural result flowing from the function and structure of the candle tin assembly." (Rep. L Mot. Inv. 4).

BASC argues that the '544 Patent does not anticipate the '969 Patent because the '544 Patent does not disclose a cover, nor does it disclose the functional aspects of Claims 1 and 5 of the '969 Patent. (Resp. L Mot. Inv. 8). BASC also argues that Limited Defendants have not established that these limitations are present in the '544 Patent as inherent disclosures with clear and convincing evidence. (Resp. L Mot. Inv. 8).

We agree with BASC. Limited Defendants have failed to point to sufficient evidence to show that the '544 Patent inherently discloses a cover that could be used as a base, upon which the candle tin is placed so as to provide flash over protection to the surface. Limited Defendants have argued that it is common for candle tins to also have a cover, but they have not shown that the candle tin disclosed in the '544 Patent must necessarily include a cover. Common sense supports a conclusion that not all candle holders have covers. Limited Defendants have also failed to show that the '544 Patent requires an object, such as a cover, to be placed under the candle tin in order to achieve its goal of protecting the surfaces below the candle tin. In fact, Limited Defendants' own statements in their motion, in which they state that a can "*often* [has] a removable cover" and that "a cover *could* readily be used with the holder" demonstrate that having a removable cover is not a necessary element of the

8

'544 Patent or candle tins in general. (L Mot. Inv. 9).  Thus, Limited Defendants

have failed to show that no reasonable trier of fact could find that the candle tin of

the '544 Patent could not function without the presence of a cover.  Since inherent

disclosure is a question of fact, and a reasonable trier of fact could find that the '544

Patent does not inherently disclose a cover or the functional limitations of the '969

Patent's Claims 1 and 5, Limited Defendants' motion for summary judgment on

invalidity is denied to the extent that it was based on a claim of anticipation.


        B. Obviousness

        Limited Defendants also claim that the '969 Patent is invalid for obviousness

under 35 U.S.C. § 103 ("Section 103"), in view of the '544 Patent alone or the '544

Patent in connection with U.S. Patent No. 3,285,694 ("'694 Patent").  Under Section

103:

> A patent may not be obtained though the invention is not identically
> disclosed or described as set forth in section 102 of this title, if the
> differences between the subject matter sought to be patented and the
> prior art are such that the subject matter as a whole would have been
> obvious at the time the invention was made to a person having ordinary
> skill in the art to which said subject matter pertains.


 35 U.S.C. § 103.  In examining a patent under a Section 103 challenge, this Court

must: (a) resolve "the level of ordinary skill in the . . . art;" (b) determine the "scope

and content of the prior art;" and ( c) ascertain "differences between the prior art and

the claims at issue."  *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966).

BASC contends that Limited Defendants' obviousness challenge automatically fails because Limited Defendants did not establish the ordinary skill in the art element in their initial memorandum in support of their motion for summary judgment. (Resp L Mot. Inv. 11). However, we agree with Limited Defendants that it is not necessary to make a factual determination regarding the ordinary skill in the art element in this case since the "technology is simple and easily understandable." (Rep L Mot. Inv. 6); *see also Union Carbide Corp. v. Am. Can Co.*, 724 F.2d 1567, 1573 (Fed. Cir. 1984)(holding "that an invention may be held to be obvious (or nonobvious) without a specific finding of a particular level of skill or the reception of expert testimony on the level of skill where . . . the prior art itself reflects an appropriate level and a need for such expert testimony has not been shown"). Under such circumstances, the level of skill has been described as "that of the 'ordinary layman of average intelligence.'" *Union Carbide*, 724 F.2d at 1573.

The scope and content of the prior art relied on by Limited Defendants have not been challenged by BASC, and we believe the prior art is within the appropriate scope and content of the claimed invention of the '969 Patent. *See In re Kahn*, 441 F.3d 977, 986-87 (Fed. Cir. 2006)(holding that the "analogous-art test" states that "a reference is either in the field of the applicant's endeavor or is reasonably pertinent to the problem with which the inventor was concerned").

The final step in this analysis is to compare the prior art to the claims sought to be invalidated. A party seeking to invalidate a patent on the basis of obviousness "must establish its obviousness by facts supported by clear and convincing

evidence." *Kao Corp. v. Unilever U. S., Inc.*, 441 F.3d 963, 968 (Fed. Cir. 2006). In order to establish obviousness, it is not enough to merely identify each element of the challenged claim in the prior art, nor is it enough to rely on "mere conclusory statements." *In re Kahn*, 441 F.3d at 986, 988. Rather, the challenging party must show the reasons why "'one of ordinary skill in the art would have been motivated to select the references and to combine them to render the claimed invention obvious.'" *Id.* at 986 (quoting *In re Rouffet*, 149 F.3d 1350, 1359 (Fed. Cir. 1998). The test for determining whether a party has made an implicit showing of a motivation to combine "is what the combined teachings, knowledge of one of ordinary skill in the art, and the nature of the problem to be solved as a whole would have suggested to those of ordinary skill in the art." *Id.* at 987-88. However, if the challenging party does not properly explain how the other party's motivation "would have led the skilled artisan at the time of the invention to the claimed combination as a whole," it can be inferred that the challenging party is using "hindsight to conclude that the invention was obvious." *Id.* at 986 (citing *In re Rouffet*, 149 F.3d 1350, 1358 (Fed. Cir. 1998). In other words, Section 103 seeks to protect the owner of a challenged patent from the use of hindsight in the analysis of a patent's obviousness. *Id.*

In this case, Limited Defendants have only shown that all of the elements of Claims 1 and 5 in the '969 Patent are found in the prior art encompassed by the '544 Patent and the '694 Patent collectively. Upon showing this to be true, Limited Defendants merely state that since both the '544 Patent and the '694 Patent are "related to candle containers, the motivation to combine is self-evident." (Rep. L

Mot. Inv. 12). Limited Defendants then state that the motivation exists because the prior art seeks to solve the same problem and that "[i]t is indisputable that the prior art not only demonstrates the desirability of including a cover with candle containers, [but also] that the cover is 'capable' of being used as a base while the candle is in use." (Rep. L Mot. Inv. 9-10). These arguments, however, are not sufficient for a reasonable trier of fact to find by clear and convincing evidence that there was a motivation to combine the prior art. Limited Defendants have simply supplied prior art containing the elements of Claims 1 and 5 of the '969 Patent and used conclusory statements in lieu of an explanation of the motivation to combine the sources they have alleged.

A sufficient explanation of a motivation to combine is necessary to prove a motivation to combine the prior art cited by Limited Defendants. *Ecolochem, Inc. v. Southern California Edison Co.,* 227 F.3d 1361, 1372 (Fed. Cir. 2000)(quoting *In re Dembiczak*, 175 F.3d 994, 999 (Fed. Cir. 1999), for the idea that there must be "specific evidence of motivation to combine" and that "'[b]road conclusory statements regarding the teaching of multiple references, standing alone, are not 'evidence'"). Limited Defendants rely on the notion that it would be obvious to include a cover that can be used as a base in the '544 Patent. However, in agreeing with Limited Defendants that the technology involved here is simple and that therefore the level of ordinary skill is that of a "layman," *Union Carbide*, 724 F.2d at 1573, our analysis of the '544 Patent does not find a motivation to combine it with a cover that can be used as a base, as is done in the '694 Patent. *See* U.S. Patent No.

12

3,285,694 col. 2 l.18-24 (filed Nov. 15, 1966)(disclosing a candle tin and a cover that can be used as a base, containing four legs that serve to raise the bottom of the candle tin from the surface). The purpose of the '544 Patent is to provide for a "unique bottom structure," U.S. Patent No. 6,398,544 col.2 l.28 (filed Jun. 4, 2002), that includes a "cone shaped dome" and "annular can support ring" and that may include "bumps to "further diminish the area of contact of the candle can . . . with a support surface" to minimize flash-over. U.S. Patent No. 6,398,544 col.5 l.12-25 (filed Jun. 4, 2002). The '544 Patent does not disclose or suggest the need or desire to additionally employ a cover to separate the burning wick from the surface, but rather discloses an elaborate bottom structure of a candle tin that already functions in the same manner as the cover in the '969 Patent. Absent a better explanation of a motivation to combine this prior art or any others named by Limited Defendants, other than the conclusory statements by Limited Defendants, we find that a reasonable trier of fact could find that a layman would not see such motivation. Accordingly, Limited Defendants' motion for summary judgement for invalidity with respect to obviousness is denied.

## II. Infringement

BASC has filed a motion for summary judgment on the issue of infringement, and Limited Defendants have filed a motion for summary judgment on the issue of infringement and have moved in the alternative to limit damages. A patent infringement can be either direct or implied. In the instant action, BASC is only

13

claiming that there is direct infringement. Direct infringement is normally defined as "[t]he making, using, or selling of a patented invention." *Joy Tech., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993). Direct infringement may be found by literal infringement or under the doctrine of equivalents. *Seal Flex, Inc. v. Athletic Track & Ct. Constr.,* 172 F.3d 836, 842 (Fed. Cir. 1999). According to the Federal Circuit, a court must determine infringement "by comparing the accused device to the claims[;] the accused device infringes if it incorporates every limitation of a claim, either literally or under the doctrine of equivalents." *MicroStrategy Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1352 (Fed. Cir. 2005)(citing *Nazomi Commc'ns, Inc. v. Arm Holdings, PLC*, 403 F.3d 1364, 1732 (Fed. Cir. 2005)). Patent "infringement, whether literal or under the doctrine of equivalents, is a question of fact." *Ferguson Beauregard/Logic Controls v. Mega Sys.,* 350 F.3d 1327, 1338 (Fed. Cir. 2003)(citing *Insituform Techs., Inc. v. Cat Contracting, Inc.*, 161 F.3d 688, 692 (Fed. Cir. 1998)). In order to find literal infringement, the accused products must include every claim limitation that is included in the asserted claims. *Id.*; *see also Zelinski v. Brunswick Corp.*, 185 F.3d 1311, 1316 (Fed. Cir. 1999)(stating that "an infringement analysis requires that the patentee prove that the accused device embodies every limitation in the claim, either literally, or by a substantial equivalent"). If "one claim limitation is missing or not met, there is no literal infringement." *MicroStrategy*, 429 F.3d at 1352 (citing *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206,1211 (Fed. Cir. 1998)). A plaintiff must prove direct patent infringement by a "preponderance of the evidence." *Advanced*

*Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 261 F.3d 1329, 1336 (Fed. Cir. 2001). In the instant action, BASC states that the doctrine of equivalents "is not at issue in [its] motion" for summary judgment, and Limited Defendants do not disagree. (B Mot. Inf. 5); (Resp. B Mot. Inf. 7). Therefore, we will address below the issue of literal infringement.

### A. Literal Infringement

Limited Defendants contend that there is no literal infringement because BASC has not offered any evidence that anyone actually uses the Accused Candle Tin in accordance with the functional limitations of Claims 1 and 5 of the '969 Patent. (L Mot. Inf. 9-12). BASC, on the other hand, argues that the Accused Candle Tin need only be "reasonably capable" of performing the functional limitations of Claims 1 and 5 of the '969 Patent for there to be infringement. (B Mot. Inf. 5-6). In support of this argument, BASC cites *Intel Corp. v. U.S. Intern. Trade Com'n*, 946 F.2d 821 (Fed. Cir. 1991), which holds that "functional language in an apparatus claim [simply] requires that a device 'need only be capable of operating' in an infringing manner." (Rep. B Mot. Inf. 5)(citing *Intel Corp.*, 946 F.2d at 832)). Limited Defendants argue that in order for the Accused Candle Tin to infringe the '544 Patent, it must be comprised of a candle tin with a cover and a holder that has protrusions on the bottom surface, the cover must be removed, set on a surface "open end down, . . . the holder must be seated on the cover[, and] the candle must be lit." (Resp. B Mot. Inf. 5). Limited Defendants also argue that

15

BASC has not shown that the Accused Candle Tin has actually been used in an infringing manner by consumers, and that BASC has read *Intel* too broadly.

We agree with Limited Defendants that *Intel* did not set forth a general rule providing that "infringement may be based upon a finding that an accused product is merely capable of being modified in a manner that infringes the claims of a patent," which would apply to all patents. *Fantasy Sports Prop., Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1117-18 (Fed. Cir. 2002). Instead, as the Federal Circuit has stated, *Intel* stands for the idea that, "as in every infringement analysis, the language of the claims, as well as the nature of the accused product, dictates whether an infringement has occurred." *Id.* at 1118. The Federal Circuit has also stated that the fact that "a device [is] capable of being modified to operate in an infringing manner is not sufficient, by itself, to support a finding of infringement." *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1330 (Fed. Cir. 2001)(citing *High Tech Med. Instrumentation v. New Image Indus., Inc.*, 49 F.3d 1551, 1556 (Fed. Cir. 1995)). However, while a possible modification is not by itself sufficient to find infringement, the language in a claim can lead a court to find infringement if an accused product is reasonably capable of operating in an infringing manner. *See id.*; *Intel Corp.*, 946 F.2d at 832.

In the instant action, Limited Defendants do not argue that the Accused Candle Tin lacks any of the physical limitations of the candle tin covered by the '969 Patent, which includes a candle tin with a cover and a holder that has protrusions on the bottom surface. Instead, Limited Defendants argue that BASC's "patent requires

16

the use of the candle holder's cover as a base when the candle is in use [and that] this is the only configuration that will infringe the patent." (Resp. B Mot. Inf. 10). However, the language of Claims 1 and 5 of the '969 Patent, like the patent in *Intel*, supports a finding that a candle tin need only be capable of having a cover that can be used as a base in order to be infringing. Specifically, Claim 1 describes a cover that can be "placed over an open end of the holder . . . *when* the candle is not lit," and that the cover, "*when* removed" can be used as a base for the holder. U.S. Patent No. 6,457,969 col. 5 l.42-45, col.6 l.37-42 (filed Oct. 1, 2002)(emphasis added). Like the claim language in *Intel*, the above stated language in Claim 1 indicates that a candle tin with a cover that is simply capable of being placed over the open end of the candle holder and also used as a base for the holder, rather than at all times being placed in those positions, will infringe the '969 Patent. Since Limited Defendants have stated that the Accused Candle Tin "is sold with its cover on," (Rep. L Mot. Inf. 2), the Accused Candle Tin literally infringes Claims 1 and 5 of the '969 Patent because it is capable of having its holder supported by the cover when the cover is placed open end down on a surface.

Limited Defendants cite in support of their position *High Tech Med. Instrumentation v. New Image Industries, Inc.*, which held that "a device does not infringe simply because it is possible to alter it in a way that would satisfy all the limitations of a patent claim." *High Tech Medical Instrumentation, Inc.*, 49 F.3d 1551, 1555 (Fed. Cir. 1995). Limited Defendants argue that using the Accused Candle Tin's cover as a base to support the holder is altering its use because "the

normal configuration for the [Accused Candle Tin] does not involve using the cover as a base." (Rep. L Mot. Inf. 11). In essence, Limited Defendants are arguing that removing the cover of their candle, which is necessarily removable, and placing it under the candle is an alteration that precludes a summary judgement ruling of infringement. We do not agree with Limited Defendants' reading of *High Tech*. The alterations in question in *High Tech* involved actually removing screws from a camera and reconfiguring the product. *High Tech*, 49 F.3d at 1555. In contrast, in the instant action, the act of placing the Accused Candle Tin's removable cover under the holder as a base requires absolutely no physical alteration of any aspect of the Accused Candle Tin.

Limited Defendants also contend that it is hazardous for the Accused Candle Tin's holder to be supported by the cover as required by the functional limitations of Claims 1 and 5 of the '969 Patent. (Rep. L Mot. Inf. 5-9). However, the only support Limited Defendants offer for their contention is the opinion of their expert, Dr. Malguarnera, in which he states that such a configuration "is a dangerous thing" because when he configured the Accused Candle Tin with the cover as a base, he spilled some wax while he "was careless in pulling his hands away." (L Mot. Inf. Ex. 7, 107-08). Rather than arguing that the Accused Candle Tin is not capable of being configured in this way, Limited Defendants argue that such a configuration is not natural. (Rep. L Mot. Inf. 11). BASC, on the other hand, has offered expert testimony that the Accused Candle Tin is reasonably capable of configuring the cover under the candle tin in a way that allows heat to transfer in the same way that

the candle tin covered by the '969 Patent does.   (B Mot Inf. Ex. D, 3-6).  BASC also has provided pictures of the Accused Candle Tin placed in an infringing manner without any modifications to the candle tin.  (B Mot Inf. Ex. 1 and 4).

In addition, Limited Defendants argue that the Accused Candle Tin cannot infringe the '969 Patent because the Accused Candle Tin includes a sticker stating "Do not burn in lid."  (Resp. B Mot. Inf. 1).  This argument, however, fails for two reasons.  First, the warning on the Accused Candle Tins warn against burning *in* the lid, whereas the '969 Patent involves candles that are capable of burning while seated *on* the cover.  Second, a party cannot avoid the reach of the patent laws by making a product that is identical to a patented product but attaching a statement warning customers to not use the product in an infringing manner.  *See Intel Corp.*, 946 F.2d at 832 (Fed. Cir. 1991)(stating that "there is no intent element to direct infringement").

In light of our interpretation of the '969 Patent and our comparison of the Accused Candle Tin to the claims in the '969 Patent, we find that no reasonable jury could find other than that the Accused Candle Tin contains all of the limitations in Claims 1 and 5 of the '969 Patent and is reasonably capable of being configured in such a way that its holder is supported by the cover when the cover is placed open end down on a surface.  Thus, we find as a matter of law that the Accused Candle Tin literally infringes Claims 1 and 5 of the '969 Patent.  Therefore, we grant BASC's motion for summary judgement on the issue of infringement and deny Limited Defendants' motion for summary judgement on the issue of non-infringement.

## B. Limited Defendants' Motion in the Alternative to Limit Damages

Limited Defendants have requested, in the alternative, that this court find that BASC is either not entitled to any damages or that BASC is only entitled to limited damages based on actual infringement. A determination of damages, however, is premature at this stage of the litigation as the parties have not yet fully briefed the issue of damages. Therefore, Limited Defendants' alternative motion to limit damages is denied without prejudice.

## III. Motion to Strike Expert Declaration

BASC has also moved to strike the declaration of Limited Defendants' expert, Dr. Malguarnera, for the reason that Limited Defendants failed to file the credentials of their expert along with the expert's declaration. Limited Defendants, however, later corrected this oversight by filing their expert's credentials along with the reply memorandum in support of their summary judgment motion on the issue of invalidity. BASC moves to strike this late submission as a violation under Local Rule 56.1, Federal Rule of Civil Procedure 56(e), and Federal Rule of Evidence 702. Since striking Dr. Malguarnera's declaration would not affect the outcome of the instant motions, we deny BASC's motion without prejudice.

## CONCLUSION

Based on the foregoing analysis, we deny Limited Defendants' motion for summary judgment on the issue of invalidity, deny their motion for summary judgment on the issue of non-infringement, and deny their alternative motion to limit

damages without prejudice.  We also grant BASC's motion for summary judgment on the issue of infringement, and deny BASC's motion to strike without prejudice.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated:   June 28, 2006