# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| BALL AEROSOL AND SPECIALTY CONTAINER, INC. | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 05 C 3684 |
| LIMITED BRANDS, INC., et al., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' (collectively referred to as "Limited Defendants") motion for reconsideration. For the reasons stated below, we deny Limited Defendants' motion for reconsideration in its entirety.

## BACKGROUND

Plaintiff Ball Aerosol and Specialty Container, Inc. ("BASC") alleges that U.S. Can Company, Inc., BASC's predecessor, is the assignee of U.S. Patent No. 6,457,969 ("'969 Patent"). Claims 1 and 5 of the '969 Patent generally cover a candle tin comprised of a hollow candle holder in which a candle is placed and a

cover that, when the candle is lit, is to be used as a base upon which to place the candle so that heat transferred through the bottom of the candle tin does not scorch the surface that the candle tin would otherwise be placed upon. Defendants Bath & Body Works, Inc., ("BBW") and Henri Bendel, Inc. ("Bendel") allegedly began selling the Henri Bendel Home Scented Travel Candle ("Accused Candle Tin") in March and April of 2004, respectively. Bendel purchased the Accused Candle Tin from BBW up to the Fall of 2005, and BBW has stopped manufacturing the Accused Candle Tin.

BASC brought the instant patent infringement action against Limited Defendants, alleging that the Accused Candle Tin infringes Claims 1 and 5 of the '969 Patent. In a memorandum opinion dated April 19, 2006, we construed various phrases used in the '969 Patent including the terms "Protrusions Formed," "Seat," and "Cup Shaped." On May 1, 2006, the parties filed cross motions for summary judgment. BASC asked for summary judgment on the issue of infringement. Limited Defendants asked for summary judgment on the issue of invalidity and non-infringement and also filed an alternative motion to limit damages as premature. On June 28, 2006, we granted summary judgment to BASC, finding Limited Defendants to be infringing the '969 Patent. We also carefully considered the issue of the '969 Patent's validity in response to Limited Defendants' motion and denied summary judgment for Limited Defendants on the issue of invalidity. In a separate order dated June 30, 2006 ("June 30 Order"), we found the patent to be valid as a matter of law based on the evidence presented in the cross motions for summary judgment. On

May 16, 2007, both parties were afforded the opportunity to file supplemental briefs on the issue of validity in light of the Supreme Court decision in *KSR International Co. v. Teleflex Inc.*, 126 S.Ct. 1727 (2007).  After consideration of parties' briefs, we reaffirmed our decision on the issue of validity of the '969 Patent.  Finally, in response to cross motions for summary judgment on the issue of damages, we issued a memorandum opinion on September 4, 2007, granting BASC's motion for summary judgment, determining a reasonable royalty rate, finding willful infringement, and awarding BASC total damages in the amount of $2,739,881 as to BBW and total damages in the amount of $94,605 as to Bendel.

Limited Defendants have filed the instant motion for reconsideration, asking this court to reconsider several rulings in this case dating back to our first memorandum opinion construing disputed claims in the '969 Patent.

## LEGAL STANDARD

Federal Rule of Civil Procedure 59(e) ("Rule 59(e)") permits parties to file, within ten days of the entry of a judgment, a motion to alter or amend the judgment. Fed. R. Civ. P. 59(e).  Rule 59(e) motions do not give a party the opportunity to rehash old arguments or to present new arguments or evidence "that could and should have been presented to the district court prior to the judgment." *Moro v. Shell Oil Co.,* 91 F.3d 872, 876 (7th Cir. 1996)(citing *LB Credit Corp. v. Resolution Trust Corp.,* 49 F.3d 1263, 1267 (7th Cir. 1995)).  Rather, for a Rule 59(e) motion, the movant "must clearly establish either a manifest error of law or fact or must present

newly discovered evidence" in order to be successful. *LB Credit Corp.*, 49 F.3d at 1267 (quoting *Federal Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986)). The decision of whether to grant or deny a motion brought pursuant to Rule 59(e) "is entrusted to the sound judgment of the district court. . . ." *In re Prince,* 85 F.3d 314, 324 (7th Cir. 1996).

## DISCUSSION

In the instant motion for reconsideration, Limited Defendants ask this court to: (1) vacate its order and memorandum opinion granting BASC summary judgment on the issue of infringement, (2) vacate the court's order finding the '969 Patent to be valid, (3) vacate the court's determination of a reasonable royalty rate, and (4) reconsider the finding of willful infringement.

## I. Infringement

Limited Defendants argue that this court committed error in its memorandum opinion dated June 28, 2006, by granting summary judgment in favor of BASC and finding Limited Defendants to be infringing the '969 Patent.  In that opinion, we carefully compared the Accused Candle Tin to Claims 1 and 5 in the '969 Patent and proceeded to review whether BASC satisfied summary judgment requirements by showing literal infringement of the '969 Patent.  Taking into consideration our claim construction ruling dated April 19, 2006, we found that no reasonable trier of fact could conclude other than that there was literal infringement since the Accused

Candle Tin is reasonably capable of operating in an infringing manner. Limited Defendants argue that this conclusion was erroneous alleging that it is based on an improper claim construction and alleging that the court used the improper standard.

A. Limited Defendants' Arguments Relating to Claim Construction

Limited Defendants first argue that this court's construction of the word "seat" in the April 19, 2006, claim construction ruling was "manifestly wrong." (Mot. Rec. Mem. 1). Claims 1 and 5 of the '969 Patent each required "protrusions resting upon the closed end of the cover to seat the holder of the cover." ('969 Patent, Col 5, Ln. 54-56); ('969 Patent Col 6, Ln. 27-29). During briefing on claim construction, the parties disputed the construction of the word "seat." (4/19/06 M.O. at 4-6). In our opinion dated April 19, 2006, we construed the word "seat" in Claims 1 and 5 to mean to "either rest or fit into the cover." (4/19/06 M.O. at 6). We declined to adopt Limited Defendants' more restrictive construction of the word "seat" as requiring "some level of engagement or fit - in this case between the holder and the cover." (4/19/06 M.O. at 4). In reaching this conclusion, this court followed the legal standard for claim construction which requires courts "[w]hen interpreting claims, [to] inquire into how a person of ordinary skill in the art would have understood claim terms at the time of the invention." *Pfizer, Inc. v. Teva Pharmaceuticals, USA, Inc.*, 429 F.3d 1364, 1372-73 (Fed. Cir. 2005)(citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005)). We also noted that in applying this standard "the person of ordinary skill in the art is deemed to read the claim term not only in the

context of the particular claim in which the disputed term appears, but in the context of the entire patent. . . ." *Id.*; *Phillips*, 415 F.3d at 1313-14.  Looking closely at the language in Claims 1 and 5 of the '969 Patent, particularly in the context of the entire patent, we found that a person of ordinary skill in the art would construe the term "seat" to mean "to rest or fit into the cover."  (4/19/06 M.O.  at 6).  In reaching that conclusion, we noted that other dependent claims in the patent specifically identified when there was a requirement that a recess be formed to allow engagement or fit between the holder and the cover.  (4/19/06 M.O. at 5).  No such limiting language existed in Claims 1 and 5, a fact that supported the conclusion that the term "seat" merely means to "either rest or fit into the cover."  (4/19/06 M.O. at 6).

In the instant motion, Limited Defendants argue that the court was incorrect in reaching its construction of the term "seat" and that this misconstruction led to an erroneous ruling on infringement.  However, Limited Defendants have not presented any new arguments or evidence to support their interpretation and have merely raised the exact same arguments already presented to this court when this court originally ruled on the issues of claim construction and on infringement.  (D. Ans. Pre-Mark. 5).  In fact, Limited Defendants have raised this argument with respect to the claim construction on numerous occasions throughout the litigation, at times unjustifiably. With respect to the claim construction, Limited Defendants merely rehash old arguments or they present new arguments or evidence "that could and should have been presented to the district court prior to the judgment." *Moro*, 91 F.3d at 876 (citing *LB Credit Corp.*, 49 F.3d at 1267).

When construing the word "seat," this court considered all relevant case law and the arguments by both parties and determined that a person of ordinary skill in the art would have understood the term "seat" at the time of the invention to mean merely to rest upon *or* to fit into the cover. (4/19/06 M.O. at 5-6). In presenting the same semantic argument that the plain language of the '969 Patent requires a "nesting feature" between the holder and the cover, Limited Defendants have not met the burden necessary to succeed on a motion for reconsideration. *See LB Credit Corp.*, 49 F.3d at 1267 (stating that to be successful on a motion for reconsideration, the moving party "must clearly establish either a manifest error of law or fact or must present newly discovered evidence").

B. Limited Defendants' Arguments Relating to the Capability Standard

Limited Defendants also claim that the court's finding of infringement was based on an erroneous understanding of Federal Circuit precedent in the cases of *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821 (Fed. Cir. 1991), and *High Tech Medical Instrumentation v. New Image Indus.*, 49 F.3d 1551 (Fed Cir. 1995).

In granting summary judgment to BASC on the issue of patent infringement, we found that even after viewing the record in a light most favorable to Limited Defendants, the Accused Candle Tin literally infringed on each of the claim limitations in the '969 Patent. *Ferguson Beauregard/Logic Controls v. Mega Sys.*, 350 F.3d 1327, 1338 (Fed. Cir. 2003)(stating that an accused product must include every claim limitation of the asserted claims in order to be literally infringing).

During summary judgment briefing, the parties disputed whether the legal standard required BASC to offer undisputed evidence of actual use of the Accused Candle Tin in violation of the '969 Patent, or whether literal infringement could be found simply since the Accused Candle Tin was reasonably capable of performing the functional limitations in Claims 1 and 5 of the '969 Patent. In *Intel*, the Federal Circuit held that to support a finding of infringement, a device "need only be capable of operating" in an infringing manner. 946 F.3d at 832. However, at the summary judgment phase, Limited Defendants pointed to the Federal Circuit's statement in *High Tech*, that "a device does not infringe simply because it is possible to alter it in a way that would satisfy all limitations of a patent claim." 49 F.3d at 1555. In our decision granting summary judgment based on literal infringement, we agreed with the proposition that literal infringement would not exist in all cases where an accused product is capable of being altered into an infringing configuration. We noted Federal Circuit precedent stating that "as in every infringement analysis, the language of the claims, as well as the nature of the accused product, dictates whether an infringement has occurred." *Fantasy Sports Prop., Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1118 (Fed. Cir. 2002).

In the instant action, the undisputed evidence in the record on summary judgment showed that the Accused Candle Tin could be placed in an infringing manner through the placing of the removable cover under the holder as a base with absolutely no physical alteration to the Accused Candle Tin itself. (6/28/06 M.O. at 16-17). Based on the record, at the summary judgment phase, and the precedent of

the Federal Circuit in *Intel*, this court found that no reasonable fact finder could conclude other than that the Accused Candle Tin literally infringed on the '969 Patent.

In the instant motion, Limited Defendants rehash their argument that *High Tech* is applicable to the instant action and that it narrows the scope of *Intel* in this case. (D. Ans. PSJ Infring. 13-14). As a preliminary matter, Limited Defendants' argument relating to infringement fails since it consists of both arguments already raised when this court ruled at the summary judgment stage and arguments that should have been raised at that time. *Moro*, 91 F.3d at 876; *LB Credit Corp.*, 49 F.3d at 1267. Also, the court did apply the correct standard when ruling on summary judgment and did not "impermissibly broaden the patent" as is claimed by Limited Defendants. (Mot. Rec. Mem. 4). Limited Defendants strain to distinguish the instant action from the facts of *Intel* in an attempt to bring the matter outside of the province of the well-established standard that a device infringes a patent if it is "reasonably capable" of infringement. *Intel*, 49 F.3d 1555.

Limited Defendants argue that the court overlooked the language in the '969 Patent in reaching its finding of infringement. According to Limited Defendants, there was no "capability" language in the '969 Patent that would bring the instant action under the standard in *Intel*. (D Mot. Rec. Mem. 3-4). Limited Defendants claim that the only possible way the *Intel* standard would apply would be if the '969 Patent used the words "place*able*" and "sett*able*" rather than the words "being *placed* upon the surface with the holder being *set* upon the cover to support the holder." (D.

9

Mot. Rec. Mem. 3-4).  Limited Defendants state that since the patent language does not use the suffix "-able" to describe the actions relating to the use of the product, it lacks the capability element that would bring it under the *Intel* standard.  (D. Mot. Rec. Mem. 3-4).  They argue that this case is, therefore, more likened to *High Tech*, a case where infringement could only occur by actually removing screws from the accused device and reconfiguring of the product.  *High Tech*, 49 F.3d at 1556.

We disagree with Limited Defendants that the *Intel* "reasonably capable" standard is inapplicable to the instant action based upon the language in the '969 Patent.  The '969 Patent does contain capability language similar to the patent at issue in *Intel*.  As we noted on summary judgment, the language in the '969 Patent implies that the product must be capable of placing the cover on the surface and setting the holder on the cover and does not require that such actions be taken as is suggested by Limited Defendants.  (6/28/06 M.O. at 12).  Limited Defendants' argument that a patent must use the suffix "-able," as did the patent in *Intel*, in order to fall under the "reasonably capable" standard, is overly broad and unsupported by any precedent.  Limited Defendants have failed to show how the capability language in the '969 Patent distinguishes it in any way from the facts of *Intel*.

The court properly applied the reasonably capable standard to this case and correctly concluded that, based on the fact that the Accused Candle Tin was reasonably capable of infringing on every element of the relevant claims in the '969 Patent without any alteration whatsoever, no reasonable trier of fact could conclude other than that the Accused Candle Tin infringed literally on the '969 Patent.

Therefore, we deny Limited Defendants' motion for reconsideration with respect to the court's award of summary judgment to BASC on the issue of infringement.

## II. Validity

In the instant motion, Limited Defendants ask the court to vacate its order finding the '969 Patent to be valid as a matter of law. At the summary judgment phase, the parties disputed the issue of whether the '969 Patent was valid. A patent that is issued is presumed valid by statute and the party asserting invalidity bears "the burden of establishing invalidity of the patent or any claim thereof. . . ." 35 U.S.C. § 282. Furthermore, the Federal Circuit has found that invalidity of a patent must be proven using "clear and convincing evidence." *Schumer v. Laboratory Computer Systems, Inc.*, 308 F.3d 1304, 1306 (Fed. Cir. 2002). Notwithstanding this burden, Limited Defendants moved for summary judgment on the validity issue, arguing that the record established as a matter of law that the '969 Patent was invalid.

Limited Defendants advanced the arguments in support of their motion for summary judgment on invalidity that the '969 Patent was rendered invalid due to anticipation and obviousness. (6/28/06 M.O. at 5). Both parties were given the opportunity to brief the issue of validity. Although BASC did not explicitly move for summary judgment on the issue of validity, it did argue in response to Limited Defendants' motion that, even if no genuine issue of material fact existed, the record supported the conclusion that the '969 Patent was *not* rendered invalid by anticipation or by obviousness. (P Ans. SJ Invalidity 7-9). Limited Defendants were

given an opportunity to respond to that argument in their reply in support of their motion for summary judgment on the issue of validity. After considering the extensive evidence and arguments put forth by the parties, the court denied Limited Defendants' motion for summary judgment on validity. In the June 30 Order, we found the patent to be valid as a matter of law. (OR 6/30/06). After the June 30 Order, we again gave the parties the opportunity to submit supplemental briefs on the issue of validity in light of the Supreme Court's recent decision in *KSR v. Teleflex Inc.*, 127 S.Ct. 1727 (2007). After considering the parties' arguments, the court once again confirmed its finding of the validity of the '969 Patent. (OR 6/22/07). Limited Defendants now argue that the court erred since (1) the court did not provide proper notice or allow Limited Defendants the opportunity to brief the issue, (2) a genuine issue of material fact remains on the issue of validity of the '969 Patent, and (3) the Supreme Court's decision in *KSR* suggests that the '969 Patent is invalid.

A. Propriety of the Court's Order Finding Validity

Limited Defendants first argue that the court committed error in the June 30 Order finding validity by virtue of the fact that Limited Defendants were deprived of notice and the opportunity to brief the issues. To the contrary, the court's order came shortly after extensive briefing by the parties on the very issue of validity. The Seventh Circuit has upheld a court's *sua sponte* entry of summary judgment when the losing party "is given notice and an opportunity to come forward with its evidence." *Jones v. Union Pac. R.R. Co.*, 302 F.3d 735, 740 (7th Cir. 2002). In

*Jones*, the losing party "had moved for summary judgment and marshaled all the favorable evidence available in support of that motion." *Id.* The same is true in this case.

Limited Defendants incorrectly argue that they had no opportunity to respond to the issues decided as a matter of law in the court's order. Throughout the briefing by the parties on Limited Defendants' motion for summary judgment on the issue of validity, Limited Defendants were presented with the argument that even if no genuine issue of material fact existed on the issue of validity, judgment in favor of BASC on validity would be appropriate. Furthermore, in its motion for reconsideration, Limited Defendants have not identified any other evidence they would have presented that would begin to satisfy their stringent burden of showing invalidity or even an issue of material fact on validity.

Limited Defendants argue that the court's order finding validity precluded them from presenting the issue of patent indefiniteness. However, as BASC correctly points out, Limited Defendants brought the issue of indefiniteness to the attention of the court when they attempted to file a supplemental motion for summary judgment on that issue. (D Mot. 8/11/2006). Oral argument was held on the issue and BASC argued that Limited Defendants' defense of indefiniteness was waived due to nonresponsiveness by Limited Defendants on the issue during discovery. (OR 8/16/06). Taking into consideration the arguments by BASC, the court denied Limited Defendants leave to file a supplemental motion for summary judgment on the issue. (OR 8/16/06). Therefore, Limited Defendants' argument that they were

blind-sided by the court's order and given no opportunity to raise the issue of indefiniteness lacks merit. Limited Defendants were not deprived of the opportunity to brief the issue of validity and were effectively put on notice that the issue of validity might be resolved against them when BASC asserted as such in its response to Limited Defendants' motion for summary judgment.

### B. Substance of the Court's Order Finding Validity

After considering the stringent burden placed by the Federal Circuit on defendants who assert invalidity, it was clear that no reasonable fact finder could conclude other than that the '969 Patent was valid as a matter of law. (OR 6/30/06). Limited Defendants moved for summary judgment on the issue of validity, claiming that the '969 Patent was invalid due to anticipation and obviousness. Limited Defendants argue in their motion for reconsideration that the testimony and evidence they offered when briefing their own motion for summary judgment on the issue of validity was sufficient at the very least to raise a material issue of fact. However, just as they did at the motion for summary judgment phase, Limited Defendants fail to account for the fact that they are required to demonstrate invalidity using clear and convincing evidence. *Schumer*, 308 F.3d at 1306.

### 1. Anticipation

At the summary judgment phase, Limited Defendants argued that the '969 Patent was invalid by anticipation, due to the fact that each claim limitation was

disclosed in a prior patent. According to the Federal Circuit, a claim is invalid by anticipation if a single prior art reference expressly or inherently discloses each claim limitation. *Perricone v. Medicis Pham. Corp.*, 432 F.3d 1368, 1375 (Fed. Cir. 2005). Limited Defendants point to U.S. Patent No. 6,398,544 ("'544 Patent"). The purpose of the '544 Patent is to "provide a candle can . . . [that] includes an insulating and highly effective flash over prevention safety bottom." U.S. Patent No. 6,398,544 col.3 1.1-4 (filed Jun. 4, 2002). When ruling on Limited Defendants' motion for summary judgment on the issue of validity, we noted that the '544 Patent did not disclose a cover for the candle tin or a practice by which to place the candle tin on such a cover to further aid in flash over prevention. (6/28/06 M.O. at 7-8). We considered all of the evidence marshaled by Limited Defendants in support of their motion for summary judgment and found that they had not established that the limitations present in the '544 Patent anticipated the claims in the '969 Patent. We noted that "[c]ommon sense supports the conclusion that not all candle holders have covers." (6/28/06 M.O. at 7-8). Noting the fact that Limited Defendants held the burden of showing invalidity with clear and convincing evidence, we denied Limited Defendants' motion based on anticipation. (6/28/06 M.O. at 8-9). The June 30 Order was merely an extension of the conclusion that, after being given an opportunity to fully brief the issue, Limited Defendants had failed to come close to establishing invalidity via anticipation using clear and convincing evidence. (OR 6/30/06). Therefore, the court did not commit error in finding that the patent was not invalid based on anticipation in the June 30 Order.

15

2. Obviousness

In their motion for summary judgment on the issue of validity, Limited Defendants also argued that the '969 Patent was invalid due to obviousness under 35 U.S.C. § 103 ("Section 103"). Section 103 states: "[a] patent may not be obtained . . . if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art. . . ." 35 U.S.C. § 103. Limited Defendants argued on summary judgment, that the '969 Patent was invalid since each of the relevant claims were obvious due to the contents of the '544 Patent. We disagreed and denied Limited Defendants' motion for summary judgment on that issue.

In the instant motion, Limited Defendants incorrectly state that this court, on summary judgment, merely concluded that a triable issue of fact remained on the issue of obviousness and that this determination was contradicted by the June 30 Order which found that the no triable issue of fact remained on the issue of validity and that BASC was entitled to judgment as a matter of law on that issue. This court, in its memorandum opinion addressing Limited Defendants' motion for summary judgment on the issue of validity, went well beyond the conclusion that Limited Defendants had merely failed to show that no issue of material fact remained on the issue of obviousness. In fact, based on the evidence presented by Limited Defendants, this court stated that "our analysis of the '544 Patent does not find a motivation to combine it with a cover that can be used as a base, as is done in

[another patent]." (6/28/06 M.O. at 12). We further stated that "the '544 Patent does not disclose or suggest the need or desire to additionally employ a cover to separate the burning wick from the surface. . . ." (6/28/06 M.O. at 13). Based on these conclusions, we found that Limited Defendants had failed to satisfy their burden on summary judgment relating to validity. In our June 30 Order, this court merely applied the clear and convincing standard and further concluded that, based on the entire record presented in the extensive briefing by both parties on the issue of validity, it was clear that no reasonable fact finder could conclude other than that Limited Defendants had not shown invalidity by clear and convincing evidence. This conclusion was plainly supported by the evidence and the legal standard governing the issue of patent validity. Limited Defendants have not pointed to any evidence or new argument demonstrating that this court committed error in its June 30 Order finding the '969 Patent to be valid.

### C.  Issue of Validity in Light of *KSR*

After this court's rulings on the issue of patent validity, the United States Supreme Court addressed the issue of obviousness in its decision in *KSR Int'l v. Teleflex, Inc.*, 126 S.Ct. 1727 (2007). On the court's own motion, the court allowed the parties to submit supplemental briefing on the issue of whether the *KSR* decision had any effect on this court's finding that the '969 Patent was not invalid due to obviousness. The parties did submit extensive briefing on the issue and this court reviewed the *KSR* decision along with Federal Circuit precedent applying the new

standard after *KSR*. After reviewing all of the information, the court issued an order reaffirming the finding that the '969 Patent was valid in light of the decision in *KSR*. Limited Defendants now move for reconsideration of this finding and argue that the precedent set by *KSR* bars a finding of validity.

BASC correctly points out that Limited Defendants' motion for reconsideration merely rehashes the arguments made on supplemental briefing or raises arguments that should have been raised when the court gave Limited Defendants an opportunity to submit supplemental briefing on the issue. As such, Limited Defendants cannot prevail on their motion for reconsideration of the issue of obviousness since they have not shown that the court committed a manifest error of law or fact, and they have not provided any newly discovered evidence. *See LB Credit Corp.*, 49 F.3d at 1267 (stating that for a Rule 59(e) motion, the movant "must clearly establish either a manifest error of law or fact or must present newly discovered evidence" in order to be successful).

As a secondary matter, Limited Defendants' substantive arguments in their motion for reconsideration with respect to the *KSR* precedent are without merit, just as they were without merit at the time of the supplemental briefing. Limited Defendants argue that the *KSR* precedent "militates" against a finding of validity with respect to the '969 Patent. (D Mot. Rec. Mem. 9). Limited Defendants note that *KSR* clarified the previous standard for obviousness and found that, in determining the validity of a patent, courts can take into account the interrelated teachings of multiple patents and the creative steps that a person of ordinary skill in

the art would employ. (D Mot. Rec. Mem. 9); *KSR Int'l Co.*, 127 S.Ct. at 1739-40. Limited Defendants argue that when considering a combination of existing art in the field, the court should have concluded that the '969 Patent was a "predictable solution" to an obvious problem and found the '969 Patent to be invalid due to obviousness. (D Mot. Rec. Mem. 10). Limited Defendants argue that at the very least, the issue should have been presented to a jury. However, in emphasizing the clarification of the obviousness standard promulgated by the Supreme Court, Limited Defendants ignore the fact that even under the *KSR* standard, the validity of a patent is still presumed and patents can only be disproved by presenting clear and convincing evidence. As explained more fully in the court's order addressing the *KSR* decision, vague assertions that a combination of prior art should render a patent invalid for obviousness, like the assertions put forth by Limited Defendants at the summary judgment phase, cannot support a finding of invalidity. *Id.* at 1741. The Court in *KSR* wrote, "[r]ejections on obviousness grounds cannot be sustained by mere conclusory statements; instead, there must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness." *Id.* Further, *KSR* did not invalidate the principle that courts should not rely on hindsight to find obviousness. *Id.*

In the instant action, Limited Defendants failed to present sufficient evidence on which a reasonable trier of fact could find other than that the '969 Patent was valid. Limited Defendants had the opportunity to present this evidence during the briefing on parties' motions for summary judgment, including supplemental briefing,

on the issue of infringement and invalidity.   The Supreme Court's decision in *KSR* did not change or mitigate Limited Defendants' failure in this respect.  Even when considering the fact that a combination of prior art could form the basis of a finding of invalidity due to obviousness, Limited Defendants have failed as a matter of law to meet their burden of showing with clear and convincing evidence that the '969 Patent was invalid due to obviousness.  Thus, the court did not commit an error in upholding its decision finding the '969 Patent to be valid as a matter of law.  Therefore, we deny Limited Defendants' motion for reconsideration as it relates to this court's judgment finding the '969 Patent to be valid.

III. Patent Damages

Limited Defendants have moved this court to reconsider its grant of summary judgment to BASC on the issue of patent damages and, specifically, to vacate the court's determination of a reasonable royalty rate.  In the instant action, both parties filed cross-motions for summary judgment on the issue of patent damages.  On summary judgment, BASC argued that the undisputed facts established that it was entitled to damages based on a royalty rate of over 20%.  BASC argued that a royalty rate of over 20% was reasonable since such a rate was supported by the factors set forth in *Georgia-Pacific v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D. N.Y. 1970) ("*Georgia-Pacific* Factors").  Limited Defendants argued that, based on the undisputed facts, BASC was entitled to zero damages.  After considering the *Georgia-Pacific* Factors and the evidence presented by the parties, the court

determined that the undisputed facts established that the appropriate royalty rate to be applied was 20%. (9/4/07 M.O. at 23). After applying this royalty rate to the undisputed evidence regarding Limited Defendants' total sales during the period of infringement, the court concluded that BASC was entitled to base patent damages of $1,341,668 as to BBW, and $46,774 as to Bendel. (9/4/07 M.O. at 23-24). In the instant motion for reconsideration, Limited Defendants argue that patent damages are an inherently factual issue, that both the reasonable royalty rate and the calculation of damages should not be determined at the summary judgment stage, and that Limited Defendants have a Seventh Amendment right to a trial by jury on the issue of patent damages. Limited Defendants have not challenged in their motion for reconsideration the underlying analysis by the court that led to the royalty rate determination and the court's application of the reasonable royalty rate to the undisputed facts involving the sales of the Accused Candle Tin.

The only issue raised in Limited Defendants' motion for reconsideration is whether it was proper for patent damages to be decided on a motion for summary judgment. Limited Defendants argue that there is a "delicate balance" associated with applying the *Georgia-Pacific* Factors and that such an undertaking should only be taken by a jury. (D. Mot. Rec. Mem. 11). Limited Defendants certainly could have raised this argument at the summary judgment phase, but they did not, and their motion for reconsideration fails for that reason. *Moro*, 91 F.3d at 876; *LB Credit Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995)). Limited Defendants did not assert at the summary judgment phase that patent damages were inappropriate for determining

damages and, contrary to their current argument, Limited Defendants themselves moved for summary judgment arguing that the undisputed facts established that BASC was entitled to zero damages. Limited Defendants' argument in the instant motion that patent damages are not suited for determination at the summary judgment phase is totally without merit in light of the fact that Limited Defendants, themselves, moved the court for summary judgment on the issue.

Furthermore, precedent clearly establishes that the issue of patent damages can be resolved on summary judgment. Federal Rule of Civil Procedure 56(c) states that all factual matters can be established at the summary judgment stage. Fed. R. Civ. P. 56(c). Limited Defendants argue in support of their motion for reconsideration that there is no precedent upholding a finding of summary judgment on the issue of patent damages. Contrary to Limited Defendants' assertions in their motion for reconsideration, the Federal Circuit, in *Mitutoyo Corp. v. Central Purchasing, LLC*, 499 F.3d 1284 (Fed. Cir. 2007), has upheld an award of summary judgment on the issue of patent damages. In *Mitutoyo*, the court granted summary judgment to the patent-holder on the issue of damages and found that the undisputed facts supported a reasonable royalty rate significantly higher than the royalty rate imposed in the instant action. *Mitutoyo Corp. v. Central Purchasing, LLC*, 2006 WL 644482 at *8 (N.D. Ill. 2006). In affirming the court's royalty rate determination, the Federal Circuit found that there were no erroneous conclusions of law in calculating the royalty rate. *Mitutoyo*, 499 F.3d at 1291-92. The Federal Circuit noted that the district court accurately based its calculation on "a hypothetical negotiation between

a willing patentee and a willing licensee at the time the infringement began." *Id.* at 1292. The Federal Circuit also noted that the court appropriately determined the royalty rate based on the entirety of the evidence in the record. *Id.* Nowhere in the Federal Circuit's decision in *Mitutoyo* did the court suggest that the royalty rate calculation and the determination of overall damages is an issue that cannot be resolved on summary judgment. The Federal Circuit's decision discredits Limited Defendants' argument that, even when the facts clearly suggest that a certain royalty rate is warranted, a jury trial is still necessary for the proper determination of damages.

Limited Defendants argue that the court's grant of summary judgment violated their Seventh Amendment right to a trial by jury. There is no Seventh Amendment right to a trial by jury when there is no genuine issue of material fact for trial. *United States v. Strangland*, 242 F.2d 843, 848 (7th Cir. 1957). Summary judgment is appropriate in instances where it has been established by one of the parties that there is no genuine issue of material fact on which a jury could find for the losing party. Fed. R. Civ. P. 56(c). Not only was summary judgment applicable to the patent damages issue on summary judgment, but the record established that no genuine issue of material fact existed on the issue of damages. In determining the appropriate royalty rate, the court considered all of the factors necessary for determining the hypothetical negotiation between a willing patentee and a willing licensee at the time the infringement began. The entirety of the evidence in the record, along with the relevant legal factors established that BASC would have been in a superior

23

negotiating position at the time of infringement and that an increased royalty rate of 20% was appropriate. Furthermore, on summary judgment the record showed that the total sales of the Accused Candle Tin by BBW from March 2004 through June 24, 2007, was $6,708,342 and the total sales of the Accused Candle Tin by Bendel through June 24, 2007 was $233,873. (9/4/07 M.O. at 23-24). Thus, the court accurately found that the undisputed facts established that BASC is entitled to base patent damages of $1,341,668 as to BBW and $46,774 as to Bendel.

Limited Defendants have devoted no argument in their motion for reconsideration to the actual analysis of the court in granting summary judgment on the issue of patent damages and have only argued that summary judgment, as a rule, is inappropriate in general for patent damages. Such a position is not supported by law or precedent. Since the issue of patent damages is susceptible to resolution at the summary judgment phase and since the court accurately concluded that the record established as a matter of law that the applicable royalty rate was 20% and the base patent damages were $1,341,668 as to BBW, and $46,774 as to Bendel, Limited Defendants' motion for reconsideration on the issue of patent damages is denied.

IV. Willful Infringement

Limited Defendants argue that in light of changing Federal Circuit precedent on the issue of willful infringement, the court should vacate its finding of willful infringement on summary judgment. According to Limited Defendants, the issue of willful infringement was an issue of fact that was not susceptible to resolution on

summary judgment. BASC argues that, even in light of the recent Federal Circuit decision in *In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007), the undisputed evidence established that Limited Defendants did engage in willful infringement and that summary judgment was appropriate. Our decision on summary judgment is reinforced by *Seagate*, which we have addressed below.

### A. Willful Infringement Legal Standard Announced in *Seagate*

An award of enhanced damages in patent-infringement cases cannot be achieved without a showing of willful infringement. *Id.* at 1368; *Beatrice Foods Co. v. New England Printing & Lithographing Co.*, 923 F.2d 1576, 1578 (Fed. Cir. 1991). The Federal Circuit's decision in *Seagate* clarified the legal standard with respect to willful infringement in patent cases. *Seagate*, 497 F.3d at 1370-72. The standard for willful infringement prior to *Seagate* promulgated an "affirmative duty" on the part of a potential infringer "to exercise due care to determine whether or not he is infringing." *Id.* at 1368. In *Seagate*, the Federal Circuit found that the existing legal standard for willfulness was "more akin to negligence" and "fail[ed] to comport with the general understanding of willfulness in the civil context." *Id.* at 1371. The *Seagate* Court said that a finding of willful infringement must at the very least accompany a showing of "objective recklessness." *Id.* In so ruling, the *Seagate* court abandoned the standard of an affirmative duty of care on the part of accused infringers and emphasized that there is no affirmative duty on the part of accused infringers to obtain the opinion of counsel. *Id.*

The Federal Circuit in *Seagate* created a new two-part standard for determining willfulness. *Id.* First, the *Seagate* standard requires "a patentee [to] show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Id.* Under this first prong of the willfulness standard the "state of mind of the accused infringer is not relevant to this objective inquiry." *Id.* Second, if the first prong is met, "the patentee must also demonstrate that this objectively-defined risk . . . was either known or so obvious that it should have been known to the accused infringer." *Id.*

A second noteworthy change in the willfulness standard after the *Seagate* decision relates to the importance of the so-called "advice of counsel" defense to charges of willful infringement. *Id.* at 1368-70. The Federal Circuit in *Seagate* noted that in cases where willful infringement is alleged, defendants often asserted the advice of counsel defense, whereby the infringer establishes that it sought out and reasonably relied upon advice of counsel in infringing on a patent. *Id.* at 1368. The Federal Circuit noted that over time the advice of counsel issue evolved into a crucial inquiry in the willful infringement determination. *Id.* at 1369. A standard eventually developed, whereby the failure to assert an advice of counsel defense gave rise to an inference that the infringer received no advice of counsel in deciding to infringe. *Id.* at 1369-70. The Federal Circuit found that such an inference was inappropriate and, given the sensitive nature of attorney-client privilege, the importance of the advice of counsel issue was overstated in the willful infringement analysis. *Id.* The Federal Circuit did not abrogate advice of counsel as a defense to willful infringement

allegations, but rather emphasized that "there is no affirmative obligation to obtain opinion of counsel" on the part of infringers and the issue of advice of counsel issue should not be considered as a factor supporting willful infringement. *Id.*

Finally, the *Seagate* Court clarified another significant matter with respect to the time period in which it is necessary to show willfulness. *Id.* at 1374. The Federal Circuit stated that "in ordinary circumstances, willfulness will depend on an infringer's prelitigation conduct." *Id.* The Federal Circuit pointed out that, with respect to patent infringement that continues past the commencement of litigation, such conduct could be combated by a patent-holder's use of a preliminary injunction. *Id.* The Federal Circuit stated that when a patent holder makes no attempt to stop infringement after litigation has commenced, despite a legal mechanism for doing so, willful infringement should not be found on the basis of such post-filing conduct. *Id.* Furthermore, the Federal Circuit found that the patent-holder should have had some grounds for asserting willfulness in the original complaint and that willfulness "must necessarily be grounded exclusively in the accused infringer's pre-filing conduct." *Id.*

B. Undisputed Facts Relating to Willfulness

After *Seagate*, the issue before this court is whether the undisputed facts establish that Limited Defendants acted in a reckless manner despite an obvious risk of infringement that should have been known to them. *Id.* at 1371. Furthermore, there must be evidence of willful infringement prior to the filing of the instant action

on October 25, 2004. *Id.* at 374. In its motion for summary judgment with respect to the willfulness issue, BASC argued that the undisputed facts established that Limited Defendants engaged in willful infringement both prior to the filing of the instant action and throughout the course of the instant litigation. We agree.

The undisputed facts establish, not only that Limited Defendants were aware of the '969 Patent when they manufactured, developed, and sold the Accused Candle Tin, but also that Limited Defendants utilized the advice, support, and expertise of BASC to help create and market the infringing product. Furthermore, the undisputed evidence establishes that despite several occasions where BASC, its employees, and ultimately the court, gave Limited Defendants notice that they were acting in an infringing manner, Limited Defendants continued to manufacture and sell the Accused Candle Tin. Finally, in opposition to BASC's motion for summary judgment and in support of its own motion for summary judgment relating to damages and willfulness, Limited Defendants have pointed to insufficient evidence to support the fact that their actions were not willful and have relied almost exclusively on a defense of advice of counsel, a defense they waived by failing to comply with the court's specific order.


### 1. Pre-Litigation Willful Conduct Based Upon the Facts in This Case

The parties agree that the '969 Patent, which is now owned by BASC, was issued on October 1, 2002. (P Mot. SJ RSF Par. 8). Limited Defendants admit that prior to the dispute over the Accused Candle Tin, BASC and BBW enjoyed a

business relationship. (P Mot. SJ RSF Par. 19). In fact, the evidence shows that BASC shipped other candle tins to BBW in 2003 and 2004 as part of an agreement. (P Mot. SJ RSF Par. 19). Limited Defendants concede that in 2003, BBW decided to market a travel candle tin that would eventually become the Accused Candle Tin and approached BASC on October 7, 2003, about possibly supplying the Accused Candle Tin to BBW. (P Mot. SJ RSF Par. 19, 30).

In support of its motion for summary judgment, BASC pointed to evidence that during the negotiations between BASC and BBW regarding a potential deal whereby BASC would supply a travel candle tin to BBW, BASC sent BBW "detailed technical and engineering formulations" existing in the '969 Patent, "sensitive pricing information" relating to the '969 Patent as well as a copy of the '969 Patent itself. (P Mot. SJ SF Par. 31). Limited Defendants summarily denied these facts, but failed to properly dispute them on summary judgment by pointing to sufficient reliable evidence that this sensitive information relating to the '969 Patent was not received. (P Mot. SJ RSF Par. 31); *See Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007)(stating that summary judgment "'is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.'")(quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005)). Limited Defendants admit that the Group Product Director for BBW received an email from BASC alerting BBW of the '969 Patent and stating that a hard copy of the '969 Patent would come by fax. (P Mot. SJ RSF Par. 36). Limited Defendants rely only on the fact that BASC did not

produce the actual fax sent to BBW on summary judgment. (P Mot. SJ RSF Par. 36). However, BASC has pointed to sworn testimonial evidence that the '969 Patent was sent by fax to BBW's Group Product Director, and Limited Defendants have not expressly denied this fact, nor have they pointed to evidence that would suggest that the '969 Patent was not sent at that time. (P Mot. SJ SF Par. 31). Thus, these facts are not properly disputed and were correctly deemed admitted on summary judgment, pursuant to Local Rule 56.1. N.D. Ill. R. 56.1; *Dent v. Bestfoods,* 2003 WL 22025008, at *1 n. 1 (N.D. Ill. 2003); *See also Jankovich v. Exelon Corp.,* 2003 WL 260714, at *5 (N.D. Ill. 2003)(indicating that evasive denials that do not directly oppose an assertion are improper and thus the contested fact is deemed to be admitted pursuant to Local Rule 56.1).

Limited Defendants agree that after the exchange of communication between BASC and BBW in early October 2003, BBW informed BASC on October 19, 2003, that it would not use BASC as a supplier but would instead use a foreign corporation as a supplier. (P Mot. SJ RSF Par. 32). That foreign corporation did supply the Accused Candle Tin, which has already been deemed by this court to have infringed on the '969 Patent. (P Mot. SJ SF Par. 32). The undisputed evidence shows that BBW began selling the Accused Candle Tin in March 2004, and Bendel began selling the Accused Candle Tin in April 2004. (P Mot. SJ SF Par. 37, 39). Limited Defendants admit that BBW was subsequently alerted of the existence of '969 Patent in a letter from BASC's counsel on September 8, 2004. (P Mot. SJ RSF Par. 19, 30).

Nonetheless, both BBW and Bendel continued to produce and sell the Accused Candle Tin.

### 2. Post-Filing Willful Conduct Based Upon the Facts in This Case

Due to the continued production and sale of the Accused Candle Tin by Limited Defendants, even after they were put on notice of the '969 Patent, BASC filed the instant action on October 25, 2004. (Compl. 10/25/04). However, BASC argues that Limited Defendants' willful infringement of the '969 Patent continued well after the action was filed and even after the court found that there was infringement of the '969 Patent. Indeed, we found at the summary judgment stage relating to willfulness that the evidence supported the fact that Limited Defendants' sales of the Accused Candle Tin continued well beyond the date that this court found the Accused Candle Tin to be infringing upon the '969 Patent as a matter of law. (9/4/07 M.O. at 28). The undisputed evidence shows that BASC sent Limited Defendants a letter demanding that they cease and desist all sales of the Accused Candle Tin in light of this court's finding of infringement. (P Mot. SJ RSF Par. 53). Nonetheless, on summary judgment the evidence showed that BBW continued to sell the Accused Candle Tin until June 24, 2007, and that Bendel continued to sell the accused Candle Tin until April 2007. (9/4/07 M.O. at 28).

### 3. Relevance of Post-Filing Willful Conduct in Willfulness Inquiry

While it is true that the evidence presented by BASC of willful infringement after the filing of the litigation cannot form the sole basis for a finding of willful infringement, pursuant to *Seagate*, it is a factor that can be considered among the totality of the circumstances. *Seagate*, 497 F.3d at 1374. The Federal Circuit in *Seagate*, did not foreclose all consideration of post-litigation conduct in the willful infringement analysis. *Id.* The Federal Circuit merely stated that in most instances post-litigation conduct should not be the sole basis for a finding of willful infringement since other remedies are available to the patent-holder, including a legal action for a preliminary injunction. *Id.* In this case, BASC may have been dissuaded from filing a preliminary injunction by Limited Defendants' representation that the Accused Candle Tin was no longer being sold. The evidence shows that Limited Defendants represented to BASC and to this court that the Accused Candle Tin was no longer being sold by Limited Defendants as of July 31, 2006. (Brennan Decl. Par. 4-7); (Lucas Decl. Par. 4-7). However, the evidence also shows that this representation was not accurate and that both BBW and Bendel continued to sell the Accused Candle Tin for nearly a year past that date. Therefore, even under the *Seagate* standard, based upon the facts in this case, it is still appropriate to consider Limited Defendants' willful conduct after the filing of the litigation.

4. Limited Defendants' Failure to Support Lack of Willfulness

As stated above, at the summary judgment phase, BASC provided overwhelming undisputed evidence in support of their position that Limited Defendants willfully infringed the '969 Patent. In contrast, Limited Defendants pointed to insufficient evidence to support the fact that they were not willfully infringing the '969 Patent. As noted more fully in our memorandum opinion on damages, Limited Defendants' position at summary judgment with respect to willfulness consisted of an argument that Limited Defendants relied on advice of counsel and reliance on letters from Limited Defendants' counsel indicating that Limited Defendants believed there was no proof of infringement. (9/4/07 M.O. at 27). On summary judgment we found that the evidence presented by Limited Defendants was not sufficient to support their position that the infringement was not willful. (9/4/07 M.O. at 27). Limited Defendants have not shown that this court erred in reaching such a conclusion and, therefore, Limited Defendants cannot prevail on their motion for reconsideration. *LB Credit Corp.*, 49 F.3d at 1267. On summary judgment, we noted that this court had ordered Limited Defendants to advise BASC whether Limited Defendants would assert an advice-of-counsel defense during litigation. (9/4/07 M.O. at 27); (OR 11/29/05). We noted that on December 10, 2005, in response to the court's order, Limited Defendants stated that they had no intention of raising an advice of counsel defense. (P Mot. SJ Damages Ex. 11). Therefore, we appropriately found on summary judgment that Limited Defendants had waived the advice of counsel defense. However, in accordance with *Seagate*, we did not treat Limited Defendants' failure to assert an advice of counsel

33

defense as an adverse inference against them on summary judgment. *Seagate*, 497 F.3d at 1369-70. We merely concluded that it could not be used to combat BASC's argument that Limited Defendants infringed willfully. (9/4/07 M.O. at 26-27)

We also noted on summary judgment that the letters from counsel relied upon by Limited Defendants could not be considered by a reasonable trier of fact to be credible evidence to support the fact that Limited Defendants did not willfully infringe the '969 Patent. (9/4/07 M.O. at 27). Such letters amounted, in effect, to mere legal statements that no infringement could occur without a finding of infringement. On summary judgment we found that such an argument was flawed and that such assertions could not constitute evidence that would cause a reasonable trier of fact to conclude that Limited Defendants were not willfully infringing. (9/4/07 M.O. at 26-27). Limited Defendants have not shown in support of their motion for reconsideration that the evidence they presented on summary judgment rebutted the overwhelming evidence presented by BASC, establishing that Limited Defendants willfully infringed.


C. Application of the Undisputed Facts to the Standard in *Seagate*

As noted above, the standard in *Seagate* places the burden on the patent-holder to establish willfulness by showing (1) "clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent" and (2) that this risk was "known or so obvious that it

should have been known to the accused infringer." *Seagate*, 497 F.3d at 1369-70. The undisputed evidence presented by the parties overwhelmingly favors a finding of willful infringement. BASC presented uncontradicted evidence supporting the fact that Limited Defendants did have knowledge of a high likelihood that the Accused Candle Tin infringed upon the '969 Patent. The undisputed evidence shows that Limited Defendants were put on notice of their infringement from a variety of sources yet nonetheless continued to produce and sell the Accused Candle Tin for almost a year after a court found that the Accused Candle Tin infringed upon the '969 Patent. Taking into account the undisputed evidence of willful infringement prior to the filing of the instant action, along with continuous willful infringement throughout this litigation, no reasonable trier of fact could conclude other than that Limited Defendants willfully infringed upon the '969 Patent. Thus, even under the revised willful infringement standard posited by the Federal Circuit in *Seagate*, summary judgment in favor of BASC was appropriate on the issue of willful infringement. Therefore, we deny Limited Defendants' motion to reconsider this court's finding of willful infringement on summary judgment.

## CONCLUSION

Therefore, based on the foregoing analysis, we deny Limited Defendants' motion for reconsideration in its entirety.


Samuel Der-Yeghiayan
United States District Court Judge

Dated: March 27, 2008